UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GUL NAZ AKBARI (A#221-417-423),

Petitioner,

v.

WARDEN OF CALIFORNITY CITY DETENTION FACILITY,

Respondent.

No. 1:26-cv-07992-DC-SCR

ORDER &

FINDINGS & RECOMMENDATIONS

Petitioner is an Afghan asylum seeker who has been in federal immigration detention for nearly eighteen months and was recently granted withholding of removal. She filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1). The undersigned finds that Petitioner's detention violates substantive due process because it is no longer reasonably related to the purposes of that detention. Based on these findings, the undersigned recommends that Petitioner be immediately released from Respondent's custody.

**I. Factual and Procedural History**

Petitioner is a native and citizen of Afghanistan who fled the Taliban regime and entered the United States on or about May 21, 2025. ECF No. 1 at 129. She has remained in civil immigration detention since that date. While en route to the United States, she suffered a miscarriage for which it is not clear she received medical treatment. ECF No. 1 at 105. At the

U.S.-Mexico border, she was detained and placed in expedited removal proceedings pursuant to Section 235(b)(1) of the Immigration and Nationality Act. ECF No. 1 at 129 (Notice and Order of Expedited Removal). While in immigration detention, she was interviewed by a Department of Homeland Security agent on August 12, 2025, when she expressed a fear of being returned to Afghanistan. ECF No. 1 at 131-132. An immigration judge ("IJ") subsequently vacated the DHS negative credible fear determination and determined that Petitioner had "established a significant possibility of eligibility for asylum under section 208 of the INA[.]" ECF No. 6 at 17. Therefore, Petitioner was placed in standard removal proceedings pursuant to Section 240 of the Immigration and Nationality Act.

In a declaration filed in support of her § 2241 application, Petitioner indicates that she believed her "case would move forward within a reasonable amount of time." ECF No. 1 at 13. Instead, her case was continued sixteen times and her first immigration hearing did not even occur until September 19, 2025, after she had been detained for four months. ECF No. 1 at 13; ECF No. 6 at 17-19 (Order of the IJ).

During nearly eighteen months of immigration detention, Petitioner has experienced numerous mental health crises and medical problems. While initially in the custody of Customs and Border Patrol, Petitioner attempted suicide. ECF No. 1 at 96. Thereafter, she was diagnosed as a suicide risk at several different immigration detention facilities. See ECF No. 1 at 98-99. Her other medical issues while detained have included "substantial weight loss, ongoing medical issues including high blood pressure, and difficulty obtaining necessary medications and adequate medical care." ECF No. 1 at 10. Petitioner had to be transported to an outside emergency room on multiple occasions based on the inadequate medical care in immigration detention. Id.

The conditions of Petitioner's civil confinement have also been "exceptionally harsh and unsanitary, creating an environment that exacerbates both … physical and emotional distress while severely limiting [her] ability to communicate with or support [her] loved ones." ECF No. 1 at 10. Petitioner is currently detained at the California City Detention Facility located in this judicial district.

////

She filed the pending habeas petition on September 17, 2026. ECF No. 1 at 8. She challenges her prolonged civil detention without an individualized bond hearing on the basis of both procedural and substantive due process grounds. ECF No. 1 at 9, 11. As a remedy, Petitioner requests immediate release or, in the alternative, a bond hearing before an IJ where the government has the burden of demonstrating that her detention is justified based on dangerousness or flight risk. ECF No. 1 at 12.

Respondent filed an answer to the petition on October 8, 2026, contending that Petitioner is mandatorily detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) as an applicant for admission because she was detained at the border and never released into the United States. ECF No. 6. Although Respondent indicates that due process does not require an individualized bond hearing based on Dept. of Homeland Secur. v. Thuraissigiam, 591 U.S. 103, 139 (2020), the answer does not address Petitioner's substantive due process challenge to her civil detention. ECF No. 6 at 3.

On October 13, 2026, an immigration judge ("IJ") found Petitioner removable pursuant to Sections 212(a)(6)(A)(i) and (a)(7)(A)(i)(I) of the INA and denied her asylum application. ECF No. 9 at 3. While the IJ ordered Petitioner removed to Afghanistan, the IJ granted her withholding of removal based on her "political opinion in supporting both women's rights and Hazara rights in Afghanistan" which make it more likely than not that she would be subjected to persecution. ECF No. 9 at 5, 19. Petitioner reserved her right to appeal the IJ's decision. ECF No. 9 at 20. The deadline to file an appeal to the Board of Immigration Appeals is November 12, 2026. Id.

Petitioner filed her traverse on October 26, 2026 along with a copy of the IJ's grant of withholding of removal and letters of support and sponsorship from a U.S.-citizen sponsor and Casa Marianella, a non-profit immigrant assistance organization. ECF No. 9.

Based on Respondent's failure to meaningfully address Petitioner's substantive due process claim and the evidence in support in the record, and the grant of withholding of removal, the undersigned ordered supplemental briefing concerning: "1) whether DHS requested any continuances in Petitioner's removal proceedings or whether the immigration court sua sponte re-calendared Petitioner's hearings and, if not, what was responsible for the delays alleged in the §

2241 petition; 2) whether Respondent intends to appeal the immigration judge's grant of withholding of removal to Petitioner; 3) any specific efforts to pursue a third-country removal that Respondent intends to make in Petitioner's case." ECF No. 11. The Court also ordered Respondent to address Petitioner's substantive due process challenge in light of Doe v. Chestnut, 810 F.Supp.3d 1169 (E.D. Cal. 2025) as well as her prolonged detention claim based on Zadvydas v. Davis, 533 U.S. 678 (2001) and Prieto-Romero v. Clark, 534 F.3d 1053 (9th Cir. 2008).

Respondent submitted an untimely supplemental response on November 5, 2026 indicating the reasons for several of the delays in Petitioner's removal proceedings. ECF No. 12 at 1-2. Respondent stated that the Department of Homeland Security ("DHS") does not intent to appeal the IJ's grant of withholding of removal to Petitioner. ECF No. 12 at 2. Although Respondent submitted further briefing on Petitioner's prolonged detention claim under Zadvydas, the supplemental response did not address Petitioner's substantive due process challenge. See ECF No. 11 (ordering supplemental briefing).

**II. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing.

Although Petitioner was ordered removed on October 13, 2026, she is still subject to detention pursuant to 8 U.S.C. § 1225(b)(1) because she reserved her right to appeal this decision and her time to appeal has not expired. In their supplemental answer, Respondent concedes as

much by indicating that "once the removal order becomes final, the detention authority shifts to 1231(a)(2) mandatory detention[.]" ECF No. 12 at 3.

**III. Petitioner's Detention is No Longer Reasonably Related to its Purposes**

Claim one of the § 2241 petition alleges that Petitioner's detention has become punitive in violation of her right to substantive due process. ECF No. 15 at 6-12. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of criminal pretrial detention, "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). By the same token, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. ICE, 704 F. Supp. 3d 1153, 1172 (W.D. Wash. 2023); see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).[1]

The undersigned applies the following five-factor balancing test developed by Judge Pitts of the Northern District of California to evaluate whether a particular individual's ongoing immigration detention violates substantive due process: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under

[1] For reasons explained in Sarna v. Chestnut, 1:26-cv-04535-DC-SCR, ECF No. 29 (E.D. Cal. Nov. 2, 2026) (Findings & Recommendations), Thuraissigiam does not preclude the Court from testing the legality of Petitioner's detention under the substantive due process clause.

which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II"). Several judges of this Court, including the undersigned, have adopted this framework in resolving similar substantive due process claims. See Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. 2025); Rivas Campos v. Chestnut, No. 1:26-CV-01330 DJC SCR, 2026 WL 1816190 (E.D. Cal. June 24, 2026), report and recommendation adopted sub nom. Campos v. Chestnut, No. 1:26-CV-01330 DJC SCR, 2026 WL 1899541 (E.D. Cal. July 1, 2026).

### A. Five Factor Analysis

#### i. Length of Detention

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting United States v. Salerno, 481 U.S. 739, 747 n. 4 (1987)). "The point at which detention constitutes a due process violation requires a case-by-case analysis." Id. (citing United States v. Gelfuso, 838 F.2d 358, 359–60 (9th Cir. 1988)).

Petitioner's mandatory detention has exceeded seventeen months, which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore [v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent"); see also Rodriguez Diaz, 53 F.4th 1189, 1207 (9th Cir. 2022) (noting the Ninth Circuit has "previously referred to detentions longer than six months as 'prolonged['] . . . in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them."). Petitioner's potential BIA appeal—or an appeal by DHS to the BIA of the grant of withholding of removal—and any subsequent petition for review before the Ninth Circuit further suggest that she "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025); see also Tavurov v. Noem, 819 F. Supp. 3d 1209, 1221 (W.D. Wash. 2026) (noting "BIA appeals can take over six months" and that "[a]ccording to the Ninth Circuit's public website, it takes approximately 6 to 12 months from the

date of the notice of appeal to oral argument and, following argument, most cases take three months to a year for the Court of Appeals to decide the case").

Additionally, Petitioner has not received any bond hearing during this nearly eighteen month period of immigration detention. This fact distinguishes Petitioner's case from other decisions concerning substantive due process where petitioners had received bond hearings before an IJ earlier in their detention. See, e.g., Espinoza v. Wofford, No. 1:24-CV-01118-SAB-HC, 2025 WL 1556590, at *10 (E.D. Cal. June 2, 2025), dismissed sub nom. Espinoza v. Becerra, No. 25-4147, 2026 WL 1008510 (9th Cir. Mar. 10, 2026) (finding Petitioner's 30-month detention did not violate substantive due process where the Petitioner had received a bond hearing before an IJ where the government bore the burden of proof by clear and convincing evidence); Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008) (upholding constitutionality of 41-month detention where the petitioner received three bond hearings).

Nevertheless, while Petitioner's detention is prolonged, its current duration, standing alone, does not violate substantive due process. See Torres, 995 F.3d at 699 (identifying 21 months of pre-trial detention as "likely approaching the outer bounds of due process"). "[W]hile the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I") (internal citation omitted).

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original). Thus, while the current duration of Petitioner's detention leans in some meaningful way toward a substantive due process violation, the undersigned must weigh it in addition to the remaining factors.

**ii. Government Contribution to Delay**

Relevant to this factor is whether the government is responsible for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also

Gelfuso, 838 F.2d at 359 (finding the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued").

Petitioner asserts that there were sixteen continuances in her removal proceedings and that there was a four-month delay before her first hearing was held in immigration court. ECF No. 1 at 13. The evidence submitted by Respondent indicates that Petitioner's first master calendar hearing was not scheduled until January 28, 2026. ECF No. 12 at 29. This eight month delay between Petitioner's arrest on May 21, 2025 and her first hearing in immigration court remains wholly unexplained. As a result, the undersigned finds that this delay is attributable to Respondent. Although Petitioner's immigration counsel requested two continuances, additional delay attributable to Respondent occurred after May 2026 when Petitioner was transferred to California City Detention Facility. ECF No. 12 at 27. Petitioner's immigration proceedings were sua sponte continued by the IJ on numerous occasions for unexplained reasons. This second factor tilts in favor of Petitioner due to the multiple delays attributable to the government.

**iii. Evidence of Flight and Danger Risk**

Determining whether Petitioner's prolonged detention has become excessive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086.

There is no evidence that Petitioner has a criminal record anywhere. ECF No. 6 at 7. Additionally, her manner of entry into the U.S. does not indicate that she is a danger to the community. ECF No. 6 at 7. She did not engage in any type of resistance at the time of her apprehension. Id. Thus, there is no evidence that indicates that detention is required based on Petitioner's dangerousness.

As for flight risk, Petitioner has submitted substantial evidence that she has a U.S.-citizen sponsor in San Diego, CA as well as additional alternative housing, case management, and transportation assistance from Casa Marianella in Austin, Texas. ECF No. 9. These resources in

the community demonstrate her intention to establish a stable residence in the United States. Respondent does not suggest nor offer any evidence that she is a risk of flight. Moreover, now that she has been granted withholding of removal, there is little chance of her being removed and thus little chance that flight from removal even remains a relevant issue. This factor supports a finding that her detention without bond is not reasonably related to the purposes of her immigration detention – protecting the community from danger and guarding against risk of flight.

**iv. Alternatives to Detention**

The next factor considers "whether the government's interests in limiting the risks of flight and community danger can be adequately protected through alternatives to detention that are less harsh." Doe v. Becerra II, 732 F. Supp. 3d at 1088. If they can, "then detention (instead of one of these alternatives) is excessive in relation to those interests and unconstitutionally punitive." Id. The undersigned finds that Petitioner's evidence of available housing and transportation assistance in two different communities are viable alternatives to detention in this case. ECF No. 9. So too are electronic monitoring and other standard conditions of release. Nor has Respondent made any showing suggesting Petitioner would not comply with conditions of release. Therefore, this factor also suggests that Petitioner's civil detention is not reasonably related to its purposes.

**v. Conditions of Confinement**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'").

Petitioner describes the conditions of her civil confinement as "exceptionally harsh and unsanitary, creating an environment that exacerbates both… physical and emotional distress while severely limiting [her] ability to communicate with or support [her] loved ones." ECF No. 1 at 10. These conditions have affected Petitioner's physical health and caused her to experience

substantial weight loss and high blood pressure. Additionally, and more concerning to the Court, is how the conditions of confinement have impacted Petitioner's mental health. Petitioner attempted suicide, and has been listed as a suicide risk ever since. ECF No. 1 at 98-99. Despite trying various medications, she continues to suffer from panic attacks and anxiety while confined. See ECF No. 1 at 100-131.

The Court also notes that these conditions are consistent with the reports of "prison-like" conditions at the California City Detention Facility, where Petitioner is detained. A May 2026 report from the California Department of Justice described how detainees are subject to long lock down periods in cells, excessive headcounts, verbal abuse from staff, extremely cold temperatures inside the building, leaks, and lack of weather-appropriate clothing. Cal. Dep't of Justice, Immigration Detention in California, 143-144 (May 2026), https://oag.ca.gov/system/files/media/immigration-detention-2026.pdf. The authors also detailed inadequate healthcare staffing and resources, including "multiple instances in health care records and detainee interviews of failures to give detainees access to outside specialists." Id. at 144.

A series of court decisions have also concluded that the conditions inside the California City Detention Facility facilities are equivalent to conditions of confinement reserved for those who have been convicted of crimes. See, e.g., Gomez Ruiz v. U.S. Immigr. & Customs Enf't, No. 3:25-CV-09757-MMC, --- F. Supp. 3d. ----, 2026 WL 851980, at *7 (N.D. Cal. Mar. 27, 2026) (granting motion for preliminary injunction where the plaintiffs "established they are likely to succeed on their claim that medical care at [California City] violates the Fifth Amendment or, at the very least, they have raised serious questions going to the merits of that claim."); Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025) (noting allegations that the conditions at California City were "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent"); Doe v. Chestnut, 810 F. Supp. 3d at 1201 ("[T]he evidence now before the Court at least suggests several important ways in which the conditions at [California City] are not only inherently harsh but also worse than the conditions [. . .] in state prison.").

////

There is nothing novel about evaluating immigration detention conditions in terms of substantive due process. The Ninth Circuit has long held that civil detention may violate substantive due process when it is excessive in relation to its legitimate purpose or used to meet objectives that could be accomplished through less harsh means:

> [U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Wolfish, 441 U.S. at 535, 99 S.Ct. 1861. We have thus held that "a civil detainee awaiting adjudication is entitled to conditions of confinement that are not punitive." Jones v. Blanas, 393 F.3d 918, 933 (9th Cir. 2004). "[A] restriction is 'punitive' where it is intended to punish, or where it is 'excessive in relation to its non-punitive purpose,' or is 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" Id. at 933–34 (alteration accepted) (first quoting Demery v. Arpaio, 378 F.3d 1020, 1028 (9th Cir. 2004); and then quoting Hallstrom v. City of Garden City, 991 F.2d 1473, 1484 (9th Cir. 1993)). But "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Wolfish, 441 U.S. at 539, 99 S.Ct. 1861.

Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 647 (9th Cir. 2021); see also Perez v. Wolf, 445 F. Supp. 3d 275, 295 (N.D. Cal. 2020) (holding, during COVID-19 pandemic, that an immigration detainee's detention was excessive in relation to the government's purposes because of his respiratory health risks); Morales Sumano v. Chestnut, et al., No. 1:26-CV-04954-KES-CDB (HC), 2026 WL 2177112, at *4 (E.D. Cal. July 28, 2026) (collecting cases).

Accordingly, in light of Plaintiff languishing in prison-like conditions with undisputed serious mental health issues, this final factor also weighs toward finding that Petitioner's detention is excessive in relation to Respondent's legitimate interests. See Sumano, 2026 WL 2177112 (E.D. Cal. July 28, 2026) (granting habeas relief in the form of immediate release where noncitizen's civil detention violated substantive due process because her high-risk pregnancy and severe mental illness placed her and her fetus at a significant risk of death while in immigration detention).[2]

---

[2] If Petitioner appeals her order of removal to the BIA, her detention authority will remain under § 1225(b) while that appeal proceeds. If Petitioner does not appeal—and if DHS does not appeal, as it has said it will not—Petitioner's detention authority will shift to 8 U.S.C. § 1231(a)(1)-(2) on November 13, 2026. However, that shift would not affect the Court's substantive due process analysis, as detention authority would merely shift from one "mandatory" detention statute (§ 1225(b)) to another (§ 1231(a)(1)-(2)). Doe v. Becerra itself concerned another mandatory detention statute, 8 U.S.C. § 1226(c). See Associated Contract Loggers, Inc. v. U.S. Forest Serv.,

**B. Conclusion as to Substantive Due Process Analysis**

Having reviewed the relevant factors, the undersigned finds that the over seventeen-month duration of Petitioner's detention is punitive, in the sense that it is no longer reasonably related to its purposes. On balance, the absence of evidence that Petitioner's presents a risk of danger or flight (particularly in light of her grant of withholding of removal), the availability of housing and transportation assistance in the community, and the uncontested evidence of Petitioner's ongoing suicide risk while confined, firmly outweigh the government's purposes in continuing to detain Petitioner. Therefore, the Court finds that Petitioner's detention is excessive in relation to its purpose, in violation of the Due Process Clause.[3]

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The undersigned finds that appropriate remedy for this violation of substantive due process is release with standard conditions of supervision. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

---

84 F. Supp. 2d 1029, 1036 (D. Minn. 2000) ("[I]t is axiomatic that a statute cannot trump the Constitution, which is the supreme law of the land.")

[3] In the interests of judicial economy, the Court does not address Petitioner's Counts II and III.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Petitioner's motion for the appointment of counsel (ECF No. 2) is denied as unnecessary in light of the recommended relief contained herein.

IT IS FURTHER RECOMMENDED that:

1. Petitioner's application for writ of habeas corpus (ECF No. 1) be GRANTED on Count one (substantive due process) and two (prolonged detention) as follows:

a. Respondent be ordered to IMMEDIATELY RELEASE Petitioner GUL NAZ AKBARI, (A#221-417-423) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions.

b. Respondent may place Petitioner on standard conditions of supervision upon release.

2. Any order adopting these findings and recommendations include language that it does not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal, Respondent complies with all regulations concerning re-detention under an executable final order of removal, and Petitioner receives notice of that final order of removal.

3. The Clerk of Court be directed to:

a. Serve the California City Detention Facility with a copy of any release order; and,

b. Enter judgment in Petitioner's favor and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties

are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 6, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE